UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES F. LOGUE, <br><br>　　　　　　Plaintiff, <br><br> v. <br><br> YORK COUNTY <br> COURT OF COMMON PLEAS, <br><br>　　　　　　Defendant. | CIVIL ACTION NO. 1:23-CV-00535 <br><br> (MEHALCHICK, J.) |

**MEMORANDUM**

Before the Court is a motion to dismiss filed by Defendant York County Court of Common Pleas ("York CCP"). (Doc. 50). This is a civil rights action initiated upon the filing of a complaint by Plaintiff James F. Logue ("Logue") on March 27, 2023. In the operative second amended complaint, filed on April 22, 2024, Logue re-alleged that York CCP violated his civil rights under Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act ("RA") by discriminating against him based upon his disability and added allegations of Fourteenth Amendment violations based upon York CCP's denying Logue due process. (Doc. 46, at 14-15). On May 20, 2024, York CCP filed its motion to dismiss Logue's second amended complaint. (Doc. 50). For the following reasons, York CCP's motion to dismiss will be **GRANTED.** (Doc. 50).

**I.　BACKGROUND AND PROCEDURAL HISTORY**

The following background is taken from Logue's second amended complaint. (Doc. 46). Logue filed his second amended complaint on April 22, 2024. (Doc. 46). In his second amended complaint, Logue begins by re-alleging much of his previous allegations. (Doc. 46, ¶¶ 1-65). Logue suffers from alcohol use disorder ("AUD"). (Doc. 46, ¶ 8). Logue was pulled

over and charged with a second DUI on May 18, 2020. (Doc. 46, ¶ 21). After his second DUI, Logue was given a SCRAM alcohol monitoring bracelet and applied for York CCP's DUI Program. (Doc. 46, ¶¶ 27-28).

Logue tested positive for alcohol on a random urine screening on August 11, 2022, just over a week before he was scheduled to graduate from the DUI Program on August 23, 2022. (Doc. 46, ¶¶ 34, 38-39). Logue denies that he drank alcohol and argues that his positive test resulted from a throat spray. (Doc. 46, ¶ 41). Due to the positive alcohol test, Logue was not permitted to graduate from the DUI Program as scheduled. (Doc. 46, ¶ 44). Logue requested that this decision be reconsidered, but Officer Forry, the lead Adult Probation/Parole Supervisor for the DUI Program denied the request. (Doc. 46, ¶¶ 14, 45). After failing to graduate from the DUI Program, Logue began reporting increases in anxiety and depression to the DUI Program team, which did not respond but referred him to a mental healthcare specialist. (Doc. 46, ¶¶ 46-49).

On September 21, 2022, York County probation officers arrived at Logue's home and required that he take a breathalyzer test, which Logue admits to failing due to consumption of wine. (Doc. 46, ¶ 50). Officer Forry told Logue that he would not arrest him and would instead get a psychological referral in motion. (Doc. 46, ¶ 52). On September 23, 2022, Logue received an e-mail requiring Logue to report to court on September 28, 2022 based on his failed breathalyzer test. (Doc. 46, ¶ 54). Logue responded, copying Officer Forry, asking why he had not received a psychological consult referral, and later that day, Logue successfully scheduled a psychological evaluation on September 28, 2022. (Doc. 46, ¶¶ 55-57). Logue forwarded his evaluation results, which recommended immediate treatment, to Officer Forry. (Doc. 46, ¶ 59). When Logue arrived to his 4:00 PM DUI Court session, no judge was present.

Instead, Officer Forry was present and informed Logue that he would be detained as a result of his failed breathalyzer test. (Doc. 46, ¶ 60). In his second amended complaint, Logue alleges for the first time that while incarcerated, Logue continued to express his intent to remain in the DUI Program and in DUI Court and "even reached out to the lead District Attorney of York County, David Sunday, a personal acquaintance, to see if he could offer any assistance." (Doc. 46, ¶¶ 65-68). Logue also alleges for the first time that County officials ignored his requests and that he was advised that "Defendants were not happy with Plaintiff because he 'made too much noise.'" (Doc. 46, ¶¶ 67, 69).

Logue was issued a probation violation due to his failed breathalyzer test and was told that "the only way that the probation team would let him out of jail was if he was willing to 'waive' his objection to York County probation's recommendation of removal from DUI Court." (Doc. 46, ¶¶ 70-72). Logue felt he had no choice and agreed. After being released, Logue spoke with the director of York County sobriety program, who expressed shock that he was not offered in-patient treatment as a "last resort" with the DUI Court Team, as that was protocol. (Doc. 46, ¶ 74).

At Logue's probation hearing, Officer Forry recommended six months of incarceration in a county prison and additional six months of urine testing. (Doc. 46, ¶ 76). The District Attorney, meanwhile, "scoffed" at this recommendation and recommended only three months of "some sort of incarceration." (Doc. 46, ¶ 77). The Judge ultimately ordered three months of house arrest and continuous SCRAM monitoring. (Doc. 46, ¶ 77).

In the second amended complaint, Logue includes additional novel allegations that York County has discriminated against other individuals with disabilities. (Doc. 46, ¶ 81). He names five individuals who failed drug tests and were not permitted to continue in the DUI

Program. (Doc. 46, ¶ 81). Logue also alleges that unlike himself, and the five individuals named, "younger participants of the DUI Court program were given chances of rehabilitation even after multiple positive alcohol/drug tests." (Doc. 46, ¶ 82). Logue alleges for the first time that the older participants were "told things such as: grow up; you're too old for this; and you can't teach an old dog new tricks." (Doc. 46, ¶ 84). Logue contends that he was removed from the program due to personal animus and manifestation of his disability. (doc. 46, ¶ 85).

Logue commenced this action by filing a complaint on March 27, 2023. He filed an an amended complaint on July 19, 2023, which was dismissed with leave to amend by Judge Rambo.[1] (Doc. 44). Logue filed his operative second amended complaint on April 22, 2024, in which he includes nearly identical factual allegations.[2] In his second amended complaint, Logue re-asserts his ADA and RA claim in Count I, without any additional allegations other than those outlined above, and asserts for the first time in Count II a Fourteenth Amendment violation for denial of due process by removing Logue from the DUI Program. (Doc. 46, at 14-15). On May 6, 2024, York CCP filed a motion to dismiss Logue's complaint, and on May 20, 2024, filed a brief in support. (Doc. 50; Doc. 55). On June 17, 2024, Logue filed his brief in opposition. (Doc. 62). In his brief in opposition, Logue withdraws his claim for injunctive

---

[1] In her dismissal, Judge Rambo notes that "Logue's official capacity suit against Officer Forry is to be treated as against York CCP, who is already a party, and therefore the court will proceed to address the claim as brought against York CCP only." (Doc. 44, at 1 n.1). Accordingly, this Court will once again address Logue's claim as brought against York CCP only. *See Ky. v. Graham*, 473 U.S. 159, 166 (1985) (holding that an official capacity suit is treated as a suit against the entity "in all respects other than name").

[2] Any new allegation that Logue makes in his second amended complaint is pointed out in this factual summary.

relief and withdraws his claim for age discrimination.[3] (Doc. 62, at 21). The motion to dismiss is fully briefed and ripe for disposition. (Doc. 50; Doc. 55; Doc. 62). On August 30, 2024, this matter was reassigned to the undersigned district judge.

## II.   LEGAL STANDARD FOR MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S.

---

[3] There is no claim for age discrimination alleged in Logue's operative second amended complaint.

- 5 -

at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . . " *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

## III.  DISCUSSION

York CCP moves to dismiss Logue's second amended complaint for three reasons: (1) because Logue has not pled intentional discrimination to show an ADA or RA violation (2) because treatment court decisions made in individual cases are subjected to judicial immunity;

and (3) because the Eleventh Amendment bars Logue's claims against York CCP. (Doc. 55, at 11-26).

### A. ADA and RA Claims

York CCP submits that Logue fails to state a claim for violation of the ADA or RA because he does not allege intentional discrimination. (Doc. 55, at 11). Specifically, York CCP contends that Logue fails to show intentional discrimination because he does not aver that there was a pattern of York CCP treating individuals with similar disabilities to his differently than non-disabled individuals such that York CCP would be aware that a federally protected right was likely to be violated due to its conduct. (Doc. 55, at 12-16). York CCP further argues that Logue never alleges that he attempted to secure an accommodation for his disability such that he was denied a federally protected right. (Doc. 55, at 16). Logue responds that he indeed alleges intentional discrimination with the inclusion of his new allegations that other individuals were also removed from the DUI Program for consuming alcohol while some younger participants were not. (Doc. 62, at 19-20).

To state a claim under either the ADA or the RA,[4] Logue must allege that he is a qualified individual with a disability who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability. *Furgess v. Pennsylvania Dep't of Corr.*, 933 F.3d 285, 288–89 (3d Cir. 2019). "[C]laims for compensatory damages under [. . .] the ADA also require a finding of intentional discrimination," which requires alleging deliberate indifference, *S.H. ex rel. Durrell*, 729 F.3d

---

[4] The Court considers the ADA and RA claims together because "the substantive standards for determining liability are the same." See *McDonald v. Com. of Pa., Dep't of Pub. Welfare Polk Ctr.*, 62 F.3d 92, 95 (3d Cir. 1995).

at 261-63. Deliberate indifference may be pleaded by alleging that the defendant failed to "adequately respond to a pattern of past occurrences of injuries like the plaintiff['s]," *Beers-Capitol v. Whetzel*, 256 F.3d 120, 136 (3d Cir. 2001). A plaintiff can meet his obligation to establish deliberate indifference in two different ways:

> first, by alleging facts suggesting that the existing policies caused a failure to "'adequately respond to a pattern of past occurrences of injuries like the plaintiffs,'" or, second, by alleging facts indicating that she could prove "that the risk of ... cognizable harm was 'so great and so obvious that the risk and the failure ... to respond will alone' support finding" deliberate indifference. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 136-37 (3d Cir. 2001) (quoting *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)); *see S.H. ex rel. Durrell*, 729 F.3d at 263 n.23 (noting that the standard for proving deliberate indifference being adopted for the ADA context "is consistent with our standard of deliberate indifference in the context of § 1983 suits by prison inmates").

*Haberle v. Troxell*, 885 F.3d 170, 181-82 (3d Cir. 2018).

Presuming that Logue's diagnosis with AUD is a qualifying disability, Logue has not pled facts demonstrating that he has been precluded from any program, service, or activity because of his disability such that York CCP's actions amount to deliberate indifference to his disability. Logue objects to his removal from the DUI Program, but the second amended complaint does not support an inference that he was removed from the DUI Program because he is disabled. Rather, Officer Forry allegedly revoked his participation in the DUI Program because Logue tested positive for alcohol on a breathalyzer test. (Doc. 46, ¶ 44). Even assuming that the removal based upon his alcohol-related infraction was sufficiently related to his AUD diagnosis, Logue cannot show that York CCP failed to "'adequately respond to a pattern of past occurrences of injuries like the plaintiffs.'" *Haberle*, 885 F.3d at 181–82 (quoting *Whetzel*, 256 F.3d at 136-37) (citations omitted). Logue's new allegations that list other individuals who were removed from the DUI Program do not specify whether those individuals also suffered from AUD, another disability, or no disability whatsoever. (Doc. 46,

¶ 81). Therefore, the Court cannot determine if these individuals were sufficiently similar to Logue. Further, Logue also fails to allege that there was an obvious risk of cognizable harm so great that the risk alone amounts to deliberate indifference when York CCP removed Logue from the program. *Haberle*, 885 F.3d at 181–82. While sympathetic to Logue's situation, the Court also cannot think of a situation in which York CCP's removal of Logue from the DUI Program would risk such great cognizable harm on its face as to amount to deliberate indifference. According to the second amended complaint, it seems that Logue set up mental healthcare appointments with individuals who could assist him in dealing with his disability, and that those appointments were not disturbed by his removal from the DUI Program. (Doc. 46, ¶¶ 57-60, 73). Logue was also able to participate in the "Freedom Program," a volunteer-based sobriety program while housed in the York County Prison, also unrelated to his DUI Program participation. (Doc. 46, ¶ 64).

While not explicitly alleged, even if Logue objects to his removal from the DUI Program based on a denial of an ADA accommodation, such as leniency for DUI Program participants who suffer from AUD and drink alcohol, Logue would have needed to allege that he requested such an accommodation and that York CCP failed to engage in an "interactive process" to find reasonable accommodations. Neither the ADA nor the RA requires an "interactive process"; that term is typically used in the employment context as one way to determine whether an employee with a disability can work for a particular employer. *See Shapiro v. Twp. of Lakewood*, 292 F.3d 356, 359 (3d Cir. 2002) (citing 29 C.F.R. § 1630.2(o)(3)). Other than generally stating that Logue's "AUD is a physical and/or mental impairment that substantially limits one or more major life activities," (Doc. 3, ¶ 8), Logue has not explained why he requires disability accommodations and what such

accommodations would be, so the defendants' failure to explore those with him does not support an ADA or RA claim.

Accordingly, York CCP's motion to dismiss Logue's ADA and RA claims is **GRANTED**. (Doc. 50).[5]

B. Fourteenth Amendment Claim

York CCP contends that Count II should be dismissed because the Eleventh Amendment bars Logue's Fourteenth Amendment claims, and that the allegations Logue makes do not state a Fourteenth Amendment claim. (Doc. 55, at 22-26). In response, Logue asserts that the Eleventh Amendment is no bar to his claims because "the source of the discriminatory treatment was Seth Forry – not the underlying judge," thus neutralizing any sovereign immunity issue. (Doc. 62, at 21). Logue further lists the allegations in his second amended complaint and concludes that such allegations amount to a denial of Logue's due process rights. (Doc. 62, at 19-20).

As a preliminary matter, Logue does not identify a basis for the Court's jurisdiction. (Doc. 46, at 15-16). Plaintiffs must assert federal civil rights claims using 42 U.S.C. § 1983, which provides a private cause of action for violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

---

[5] Additionally, Logue's request for punitive damages in Count I is also dismissed with prejudice as punitive damages may not be awarded in private suits against the ADA. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002); (Doc. 46, at 16).

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a § 1983 claim, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). Logue fails to properly to assert his Fourteenth Amendment claim in his second amended complaint. (Doc. 46, at 15). Even if Logue had properly asserted his Fourteenth Amendment claim using § 1983, the vehicle by which federal constitutional claims may be brought in federal court, he has failed state a claim because (1) York CCP is immune under the Eleventh Amendment and (2) his allegations do not adequately show that he was deprived his due process rights. (Doc. 46).

    **1.  Eleventh Amendment Immunity**

Assuming *arguendo* that Logue properly sought to impose liability under 42 U.S.C. § 1983 against Officer Forry, Logue's suit is still barred by the Eleventh Amendment. To the extent Logue seeks to assert liability for Officer Forry's actions, Logue brought suit against Officer Forry in his official capacity, and such claims will fail on the basis of sovereign immunity. As explained *supra* n.1, a suit against a state government official in his official capacity is really a suit against the state. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). By contrast, officers sued in their personal capacity come to court as individuals. *Hafer v. Melo*, 502 U.S. 21, 26 (1991). Officer Forry was the lead Adult Probation/Parole Supervisor for the DUI Program of the York County Court of Common Pleas, which is an entity of the Commonwealth of Pennsylvania pursuant to 42 Pa.C.S. § 301(4). Thus, suing Officer Forry

in his official capacity is considered a suit against the Commonwealth of Pennsylvania. *See Callahan v. City of Philadelphia*, 207 F.3d 668 (3d Cir. 2000).

Logue's claims against Officer Forry in his official capacity, or the York CCP, are barred by the Eleventh Amendment to the United States Constitution. In this regard, the withdrawal of jurisdiction in the Eleventh Amendment confers upon the individual states immunity from suit in the federal courts. This grant of sovereign immunity encompasses not only suits in which a state is a named defendant but also extends to suits brought against state agents and state instrumentalities that have no existence apart from the state. *See Regents of the University of California v. Doe*, 519 U.S. 425 (1997); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). Thus, such immunity applies to suits brought by citizens of the defendant state as well. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984).

Notwithstanding, the immunity provided in the Eleventh Amendment is not absolute. A state may expressly waive its grant of sovereign immunity by state statute or constitutional provision. In addition, Congress can abrogate the states' Eleventh Amendment immunity through a statute enacted under constitutional authority granting Congress the power to regulate the activities of the states. *See, e.g., Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 15 (1989); *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 246 (1985). However, Congress must express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55 (1996); *Atascadero*, 473 U.S. at 246. The Commonwealth of Pennsylvania has not waived its grant of sovereign immunity under the Eleventh Amendment. In fact, the Commonwealth specifically has reserved its immunity against federal suits in 42 Pa.C.S. § 8521(b), which provides that "[n]othing contained in this subchapter shall be construed to waive the immunity of the Commonwealth

from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." None of the exceptions to sovereign immunity contained in 42 Pa.C.S. § 8522 are applicable to Logue's allegations. (Doc. 46); *see* 42 Pa.C.S. § 8522. Moreover, the federal courts repeatedly have held that Congress did not abrogate the state's Eleventh Amendment immunity when it enacted the Civil Rights Act, 42 U.S.C. § 1983. *See, e.g., Will*, 491 U.S. at 66 ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."); *Quern v. Jordan*, 440 U.S. 332, 341 (1979); *Boykin v. Bloomsburg Univ. of Pa.*, 893 F. Supp. 378 (M.D. Pa. 1995) (holding that states' immunity has not been abrogated for actions brought under §§ 1981, 1983, 1985, and 1986), *aff'd*, 91 F.3d 122 (3d Cir. 1996). Consequently, Logue's Fourteenth Amendment claims must be dismissed. *Accord Benn v. First Judicial Dist.*, 426 F.3d 233, 239-40 (3d Cir. 2005) (holding that the Philadelphia Court of Common Pleas was entitled to Eleventh Amendment immunity); *Chilcott v. Erie County Domestic Relations*, 283 F. App'x 8, 10 (3d Cir. 2008).

    **2.    Failure to State a Fourteenth Amendment Claim**

Even if Logue were correct that Eleventh Amendment immunity does not apply, the allegations in his second amended complaint do not properly allege a due process violation. (Doc. 46). While it is well established that many individuals involved in the legal system, from detainees and prisoners to those who are involuntary committed to mental institutions maintain a "fundamental constitutional right of access to the courts" embodied in the First and Fourteenth Amendments, no constitutional violation occurs when "access to the courts is impeded by mere negligence[. . . ]" *Johnson v. United States*, No. CIV.A. 3:03-0756, 2005 WL 2736512, at *2 (M.D. Pa. Oct. 2 4, 2005), *aff'd sub nom. Johnson v. Atty. Gen. of U.S.*, 187

- 13 -

F. App'x 154 (3d Cir. 2006); *Tucker v. I'Jama*, 361 F. App'x 405, 407 (3d Cir. 2010); *U. S. ex rel. Mayberry v. Prasse*, 225 F. Supp. 752, 754 (E.D. Pa. 1963) ("reasonable access to the courts is a right given to prospective litigants by the due process clause of the Fourteenth Amendment."); *Pressley v. Huber*, 562 F. App'x 67, 71 (3d Cir. 2014) (citing *Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005)); *Snyder v. Nolen*, 380 F.3d 279, 291 n. 11 (7th Cir. 2004); *Pink v. Lester*, 52 F.3d 73, 76 (4th Cir. 1995); *Gibson v. Superintendent of N.J. Dep't Law & Pub. Safety Div.*, 411 F.3d 427, 445 (3d Cir. 2005), *overruled on other grounds by Dique v. N.J. State Police*, 603 F.3d 181 (3d Cir. 2010). Thus, claims based on access to the courts "cannot be initiated based on negligent denials of access." *Tucker*, 361 F. App'x at 407. Rather, "an official may be liable only if [] he acts 'wrongfully and intentionally.'" *Tucker v. Arnold*, 361 F. App'x 409, 410 (3d Cir. 2010) (quoting *Gibson*, 411 F.3d at 445). Here, Logue has failed to assert a plausible due process claim, as the complaint lacks sufficient non-conclusory facts demonstrating that an intentional and deliberate refusal to remove Logue from the DUI Program after he failed a breathalyzer test impeded his access to the courts.[6]

    C. LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment unless an amendment

---

[6] Judge Rambo noted in her dismissal of Logue's first amended complaint that "the complaint does not allege any violation of Logue's due process rights, (*See generally* Doc. 31), and instead avers that Logue both accessed and participated in the court's DUI Program. He was later was only removed after repeated infractions and following a hearing before a judge. Thus, York CCP is entitled to sovereign immunity." (Doc. 44, at 13). None of Logue's new allegations in his second amended complaint resolve this deficiency. (Doc. 46, ¶¶ 65-69, 81-86, 95-99). Again, Logue alleges that he accessed and participated in the DUI Program and was only removed from the DUI Program after infractions and a hearing. (Doc. 46, ¶¶ 27-28, 50-60, 70-72).

would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver,* 213 F.3d 113, 116-17 (3d Cir. 2000). The Third Circuit has also acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000). The Court does not find, at this juncture, that amendment should be granted. Logue has previously attempted to amend his complaint on two prior occasions, one attempt taking place after Judge Rambo explained specifically where his allegations were lacking, and Logue has failed to cure any deficiencies. (Doc. 44, at 10-13).

**IV.    CONCLUSION**

Based on the foregoing, Defendants' motion to dismiss (Doc. 50) is **GRANTED**. Logue's second amended complaint is **DISMISSED**. (Doc. 46). The Clerk of Court will be directed to **CLOSE** this case.

An appropriate Order follows.

                              **BY THE COURT:**

**Dated: February 14, 2025**                *s/Karoline Mehalchick*
                                                      **KAROLINE MEHALCHICK**
                                                      **United States District Judge**